1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

KENNETH A. FRANK,                                1:11-CV-01175 LJO GSA HC

                              Petitioner,        FINDINGS AND RECOMMENDATION
                                                 REGARDING PETITION FOR WRIT OF
        v.                                       HABEAS CORPUS

JAMES A. YATES, Warden,

                              Respondent.
_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

        Petitioner is currently in the custody of the California Department of Corrections and

Rehabilitation pursuant to a judgment of the Superior Court of California, County of Kern,

following his conviction by jury trial on December 20, 1989, of two counts of rape by means of

an intoxicating or anesthetic substance in violation of Cal. Penal Code § 261(3).  (See Petition at

2.)  Prior to sentencing, Petitioner absconded.  Sixteen years later, Petitioner was arrested in

Israel and extradited to the United States.  On December 3, 2007, Petitioner was sentenced to

twelve years in prison.  (See Petition at 2.)

        Petitioner appealed.  On January 22, 2009, the California Court of Appeal, Fifth

Appellate District ("Fifth DCA"), affirmed Petitioner's judgment in a reasoned decision.  (See

Lodged Doc. No. 7.)  Petitioner then filed a petition for review in the California Supreme Court.

1

1   (See Lodged Doc. No. 8.)  The petition was summarily denied on April 15, 2009.  (See Lodged

2   Doc. No. 9.)

3          Petitioner next filed a petition for writ of habeas corpus in the Kern County Superior

4   Court on April 23, 2010.  (See Lodged Doc. No. 10.)  On June 23, 2010, the superior court

5   denied the petition in a reasoned opinion.  (See Lodged Doc. No.11.)  Petitioner then filed a

6   petition in this Court on July 6, 2010, in case no. 1:10-CV-01212 GSA HC.  On August 3, 2010,

7   the Court dismissed the petition without prejudice for failure to exhaust state remedies; however,

8   one of the claims was dismissed for failure to state a federal question.  Petitioner then filed a

9   habeas petition in the Fifth DCA, but the petition was summarily denied.  (See Lodged Doc. Nos.

10  12, 13.)  He then filed a habeas petition in the California Supreme Court, but the petition was

11  denied without comment.  (See Lodged Doc. Nos. 14, 15.)

12         On July 11, 2011, Petitioner filed the instant federal habeas petition.  On December 20,

13  2011, the Court dismissed Petitioner's first ground as successive to the claim the Court had

14  dismissed in the previously-filed federal petition.  On April 3, 2012, Respondent filed an answer

15  to the petition.  On April 27, 2012, Petitioner filed a traverse.

**STATEMENT OF FACTS**[1]

16

17  *Count 1.*

18     "On Friday, February 7, 1986, Dr. Ilene P., a clinical psychologist and teacher at a
    local college, went to Todd's Bar. There she saw Frank whom she recognized as a
19  physician she had met at a reception for a local judge and whom she had spoken to on
    business matters. She approached Frank, joined him, and had two drinks. When she
20  declined his invitation to go to a movie, Frank decided to accompany her to temple. Frank
    then took Dr. P. to a meeting at the medical center where he worked. After dinner, Dr. P.
21  accepted Frank's invitation to watch a video at his apartment but made it clear she was not
    interested in sex. They arrived at his apartment about 11:30 p.m.
22
       "Dr. P. declined Frank's offer of wine but accepted some Cafe Vienna. She
23  expressed distaste at its sweetness. Frank twice urged her to drink the whole cup which
    she eventually did. Shortly thereafter, Dr. P. became very drowsy and fell asleep on the
24  couch while watching the video. She remembered the two of them leaving his apartment
    about 1:30 a.m. but was not fully conscious until 6 p.m. on Saturday, when she was
25  awakened by the ringing of the telephone and, to her surprise, found herself naked in bed

26

27  ───────────────────
        [1] The Court adopts the summary of facts as set forth by the Fifth DCA in its January 22, 2009, opinion.  The
    Court notes that no transcript of the trial was ever created, since the court reporter's notes were destroyed eleven
28  years after trial while Petitioner was still a fugitive.  In the opinion, the Fifth DCA notes that it compiled its factual
    summary from Petitioner's 1986 preliminary hearing, which was the only evidentiary record it could find.

2

with Frank. Frank left shortly thereafter and Dr. P., too groggy to work as planned, slept until 7 a.m. the next morning, Sunday.

"Dr. P. cancelled a date for hiking with Frank but agreed to have breakfast with him and told him she suspected she had been drugged or gotten food poisoning. Throughout the day Dr. P. continued to feel tired, nauseous, and 'headachy.' In the late afternoon, Frank told her that they had had sexual relations and that he put a drug in her coffee thinking it would relax her.

"The following morning, Dr. P. could not recall the name of the drug Frank had mentioned. She called his office; he told her it was Ativan. She submitted to a urine and blood test that afternoon; the test was negative for Ativan.

"Dr. P. subsequently recalled several things that happened between 1:30 a.m. and 6 p.m. on Saturday: She recalled being in a shower with Frank and being in bed with him. She also remembered Frank lying on top of her with his penis in her vagina.

"When police investigated Dr. P.'s complaint, Frank admitted being with her but denied any use of drugs. He admitted using Cafe Vienna with tranquilizers to quiet his dogs and put them to sleep. Cafe Vienna was seized from Frank's apartment with his consent, but tested negative for Ativan. There were no dogs in the apartment.

*Count 2.*

"On October 12, 1985, Ms. Beverly R., a student at San Joaquin Valley College, and a female friend went to a local bar for a glass of wine. About 2:20 a.m. they went to another bar where the friend introduced Ms. R. to Frank and his brother. Shortly thereafter Frank agreed to drive Ms. R. home but stopped first at his apartment 'to get something.' At Frank's suggestion, they smoked a pipeful of marijuana. When Ms. R. commenced coughing, Frank fixed her a drink that tasted like coffee but was very sweet and which he told her contained cognac.

"A half hour later Ms. R. began to feel dizzy; she told Frank she was ill and wanted to go home. Frank asked her how much she weighed; she told him. Her vision became blurred and she fell over, striking her head on the arm of the couch. She felt herself being carried toward the bedroom. She then lost consciousness. It was about 4 a.m. on October 13.

"Ms. R. was shaken awake by Frank at 7 a.m. on October 14. She was in bed with him, naked; the sheets were covered with menstrual blood; she had vaginal pain; and semen was running down her legs. She was unable to recall anything that happened during the 27-hour period between the time she passed out and the time Frank awakened her.

"Ms. R. asked Frank if they had had intercourse, and he told her that they had and that she enjoyed it. He said he had given her a drug called Ativan to put her mind to sleep.

"A month after the incident, Ms. R. went to a doctor to make sure she did not have venereal disease but did not report the incident to police until three months after the incident because she was afraid of Frank. She testified that he had threatened her.

"Ativan, the drug Frank told both victims they had ingested, is normally prescribed for anxiety or insomnia. A large dose can cause an extended period of unconsciousness. Alcohol adds to this effect. Ativan's half life in the human body is about 18 hours. A sensitive blood or urine test should be able to detect the residue from a large

dose of Ativan taken two and a half days earlier." (*Frank, supra,* 48 Cal.3d at pp. 636-638.)

Frank was charged with two counts of rape in violation of Penal Code section 261, subdivision (3).[FN2] He initially posted bail and then he was released on his own recognizance (OR). He remained out of custody for the entirety of the three-year case and appeared at all court proceedings.

FN2. At the time of the proceedings, Penal Code section 261 provided in pertinent part: "'Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, administered by or with the privity of the accused.'" (*Frank, supra,* 48 Cal.3d at p. 635.)

On January 17, 1990, Frank failed to appear for the scheduled sentencing hearing. The court revoked his OR release and issued a bench warrant. The court never sentenced Frank and he remained at large. As we will discuss *post,* the court reporters' notes for his trial were never transcribed.

*Frank's Arrest*

In July 2006, Frank was arrested in Tel Aviv, Israel, living under the name of "Yonatan Efrat." The record is silent as to how Frank was found. It was later determined that he traveled to Israel under a legal passport, changed his name through the Israeli judicial process, practiced medicine there, married, and fathered a child. Frank was extradited to the United States and returned to Kern County on July 31, 2007. The court granted Mr. Simrin's motion to be relieved and appointed the public defender to represent Frank.

(See Lodged Doc. No. 7.)

## DISCUSSION

I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Kern County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

(1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

        Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is

barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, __, 131 S.Ct 770, 784, 178 L.Ed.2d 624

(2011); Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

        As a threshold matter, this Court must "first decide what constitutes 'clearly established

Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

*quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

of the time of the relevant state-court decision." Williams, 592 U.S. at 412. "In other words,

'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition,

the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in

. . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of

review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009), *quoting* Wright v. Van

Patten, 552 U.S. 120, 125 (2008); see Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an

end and the Court must defer to the state court's decision. Carey, 549 U.S. 70; Wright, 552 U.S.

1    at 126; <u>Moses</u>, 555 F.3d at 760.

2        If the Court determines there is governing clearly established Federal law, the Court must

3    then consider whether the state court's decision was "contrary to, or involved an unreasonable

4    application of," [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72, *quoting* 28

5    U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if

6    the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

7    question of law or if the state court decides a case differently than [the] Court has on a set of

8    materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at

9    72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in

10    character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405, *quoting* Webster's Third

11    New International Dictionary 495 (1976). "A state-court decision will certainly be contrary to

12    [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the

13    governing law set forth in [Supreme Court] cases." <u>Id</u>. If the state court decision is "contrary to"

14    clearly established Supreme Court precedent, the state decision is reviewed under the pre-

15    AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

16        "Under the 'reasonable application clause,' a federal habeas court may grant the writ if

17    the state court identifies the correct governing legal principle from [the] Court's decisions but

18    unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

19    "[A] federal court may not issue the writ simply because the court concludes in its independent

20    judgment that the relevant state court decision applied clearly established federal law erroneously

21    or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411; <u>see also</u> <u>Lockyer</u>,

22    538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists

23    could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."

24    <u>Harrington</u>, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the

25    correctness of the state courts decision, the decision cannot be considered unreasonable. <u>Id</u>. If

26    the Court determines that the state court decision is objectively unreasonable, and the error is not

27    structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious

28    effect on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires considerable deference to the state courts. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003), citing 28 U.S.C. § 2254(e)(1).  However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review. Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

III.   Review of Claims

A. Ineffective Assistance of Trial Counsel

Petitioner alleges his trial counsel rendered ineffective assistance by: 1) Failing to protect Petitioner's right to an impartial jury by allowing two unbiased jurors to remain on the panel and by refusing the trial court's offer for a mistrial; 2) Failing to engage a forensic/toxicology expert; 3) Failing to order trial transcripts and file an appeal; and 4) Failing to abide by his duty of loyalty to Petitioner by having a personal hidden agenda that created a conflict of interest.

This claim was presented by habeas petition to the Kern County Superior Court which denied the claim in a reasoned decision.  (See Lodged Doc. Nos. 10, 11.)  Petitioner then raised the claim to the Fifth DCA, and the claim was summarily denied.  (See Lodged Doc. Nos. 12, 13.) He then raised the claim in a petition for writ of habeas corpus in the California Supreme Court, and the claim was summarily denied.  (See Lodged Doc. Nos. 14, 15.)  When the California Supreme Court's opinion is summary in nature, the Court must "look through" that

7

decision to a court below that has issued a reasoned opinion.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797,

804-05 & n. 3 (1991).  In this case, the superior court analyzed and rejected the claim as follows:

> To establish ineffective assistance of counsel, petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice, which in its absence would create a probability of change in the outcome. <u>Strickland v. Washington</u> (1984) 466 U.S. 668, 694.  Prejudice must be demonstrable, and not a figment of petitioner's imagination. <u>In re Sixto</u> (1989) 48 Cal.3d 1247, 1257, <u>In re Viscotti</u> (1996) 14 Cal.4th 325, 352.

> Petitioner contends that his counsel should have routinely called for the preservation of trial records in case he appeals. Petitioner's argument omits one critical point.  Mr. Simrin had no reason to believe that petitioner would flee Kern County becoming a fugitive. It is highly doubtful that his counsel would advise him to do so becoming a potential defendant in a prosecution for obstruction of justice and aiding flight of a client to avoid prosecution. Aside from the possible legal entanglements this could cause, it could cause Mr. Simrin ethical problems with the California State Bar through rendering such assistance as an officer of the court.

> There is no record of, and petitioner makes no declaration that he continued contact with Mr. Simrin after his flight to Israel.

> It is reasonable to assume that lack of contact with his counsel after ten years, would give license to the court to destroy the records under Cal. Gov. Code Section 69955(e).

> Petitioner contends that his counsel should have hired an expert to impeach the evidence involving the chain of custody of evidence such as physical examinations. Petitioner contends that two jurors were biased against petitioner due to a prior business relationship.

> He also contends that the statements of the two victims are hearsay insofar as they relate to what petitioner declared to them.

> Petitioner provides no declarations of jurors that the presence of the two jurors who had a prior business interest with him rendered an unfair trial.

> He presents no declarations of jurors that the presence of the two jurors who had a prior business interest with him rendered an unfair trial.

> He presents no declaration of purported experts, who could discredit the testimony of law enforcement or the victims.

> Even after being extradited from Israel, petitioner had a full opportunity to argue the grounds for a mistrial alleging the errors made by his counsel and the prosecution. Given the withdrawal of Mr. Simrin, petitioner could start anew with Glen Nelson.

> There is insufficient evidence to prevail in an claim for ineffective assistance of counsel on this ground.

> . . . .

> Petitioner takes his public defender to task for failure to call Martin Brantley as a witness or to impeach him.  Calling a witness is a tactical decision generally left to

1    counsel. <u>People v. Beagle</u> (1972) 6 Cal.3d 441, 458.

2         According to Mr. Brantley's declaration, the trial records were not destroyed until
     2001 long after the expiration of ten years as mandated in Cal. Gov. Code Section
3    69955(e).

4         Petitioner provides no court order to show that Hon. Richard Oberholzer ordered
     their destruction prior to that date.  Mr. Brantley's declaration seems to say that the
5    destruction of the court records was contemporaneous with the court order.

6         Without anything to substantiate petitioner's arguments, there is nothing for
     which to impeach Mr. Brantley.  Petitioner also presents no countervailing declaration of
7    witnesses to rebut Mr. Brantley's declaration.

8         He had plenty of time to gather these records while in Israel, and fails to explain
     why he did not gather this evidence on December 3, 2007 during a motion for new trial.
9
     (<u>See</u> Lodged Doc. No. 11.)
10
     1. Fugitive Disentitlement Doctrine
11
     a. Factual Background[2]
12
          It is undisputed that the court reporters' notes for Frank's 1989 trial were destroyed
13   and never transcribed . . . . The following declarations and orders, . . ., provide the
     background for this action.
14
          On January 17, 1996, Kern County Superior Court Presiding Judge Richard
15   Oberholzer signed a miscellaneous order entitled "RETENTION/DESTRUCTION OF
     COURT REPORTERS' NOTES." The order stated:
16
          "Pursuant to the provisions of Government Code[FN4] Section 69955, it is hereby
17        ORDERED that court reporters' notes taken of proceedings in court for civil
          matters MAY BE DESTROYED five years from the date taken ... and *that court*
18        *reporters' notes taken of proceedings in criminal and juvenile matters MAY BE*
          *DESTROYED ten years from the date taken,* except where an order was entered
19        by a court directing longer retention of said notes." [FN5] (italics added.)

20        FN4. Unless otherwise indicated, all further statutory citations are to the
          Government Code unless otherwise indicated.
21
          FN5. As we will discuss, *post,* section 69955, subdivision (e) provides that in
22        criminal cases reporters' notes may be destroyed pursuant to court order after 10
          years, except in capital felony cases. (§ 69955, subd. (e).)
23
          The order excepted the destruction of reporters' notes from capital cases. It further
24   stated:

25        "This is a standing court order and has present and future application until
          revoked or modified by this court subject to annual January review for legislative
26        modifications to Government Code Section 69955."

27   ────────────────
         [2]This factual statement is taken directly from the California Court of Appeal's recitation of the facts in
28   Petitioner's direct appeal.

                                                  9

Kathy Foster, a court reporter, declared she reported part of Frank's trial, she turned over all her trial notes to the Kern County Superior Court's Record Center, and all court reporter notes were stored at that center. Foster further declared that Martin Brantley supervised the center, she asked Brantley if her notes still existed, and she was informed that the notes were destroyed "per code." Rae Foreman declared she transcribed part of Frank's trial, and her notes were subject to Judge Oberholzer's destruction order.

The record also contains a declaration from Martin Brantley, the Supervising Superior Court Clerk for Auxiliary Court Services/Court Reporters/Interpreters for the Kern County Superior Court, who was responsible for the storage of court reporter notes. Brantley declared that prior to 2001 the notes were stored in the superior court clerk's office. In 2000 or 2001, a decision was made to store the notes in an off-site facility. Brantley declared:

> "That rather than move hundred's [*sic*] of boxes of notes, a decision was made to destroy notes that met the statutory requirements of Government Code section 69955(e), in that they were over ten years old."

Brantley declared he drafted a standing court order that carried out the provisions of section 69955, subdivision (e), and it was signed by Presiding Judge Oberholzer. Thereafter, "all court reporters' notes that were over 10 years old were destroyed in 2001." Brantley declared that Kathy Foster's notes were included in this group, and all reporters' notes were stored and/or destroyed in the same fashion, except for those from capital cases. Brantley declared he personally searched the records and determined the court reporter's notes for Frank's 1989 trial did not exist.

(See Lodged Doc. No. 7.)

*b. Analysis*

Respondent alleges that the claim should be dismissed pursuant to the Fugitive Disentitlement Doctrine ("FDD"). The FDD "limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States." In re Prevot, 59 F.3d 556, 562 (6th Cir.1995). It is a "discretionary device by which courts may dismiss criminal appeals or civil actions by or against individuals who are fugitives from justice." Gutierrez-Almazan v. Gonzales, 453 F.3d 956, 957 (7th Cir.2006), *citing* Sarlund v. Anderson, 205 F.3d 973, 974 (7th Cir.2000.); see Ortega-Rodriguez v. United States, 507 U.S. 234 (1993); Molinaro v. New Jersey, 396 U.S. 365, 366 (1970); United States v. Awadalla, 357 F.3d 243 (2d Cir.2004.); Willis v. Mullins, 2009 WL 1657451 (E.D. Cal.2009); Cordell v. Tilton, 515 F.Supp.2d 1114, 1119 (S.D. Cal.2007); Morrell v. Kramer, 2001 WL764947 (N.D. Cal.2001) (unreported); Dubose v. Alabama, 47 So.3d 831 (Ala.2010). The doctrine is "long-established in the federal and state courts, trial and appellate." Prevot, 59 F.3d at 562. It has been applied not only in criminal appeals, but in civil cases as well, including *inter alia*, habeas and other

collateral challenges to a criminal conviction. See, e.g., Morrell, 2001 WL 764947 (habeas case); Willis, 2009 WL 1657451 (civil rights action); United States v. $129,374 in U.S. Currency, 769 F.2d 583, 587-88 (9th Cir.1985) (civil forfeiture proceeding); Conforte v. Comm'r, 692 F.2d 587, 589 (9th Cir.1982) (appeal from decision of tax court arising from criminal conviction for tax fraud); Sapoundjiev v. Ashcroft, 376 F.3d 727, 729 (7th Cir.2004) (immigration).

Although the doctrine has been primarily applied where the individual is presently a fugitive, the Supreme Court has indicated that a former fugitive may be disentitled if his flight has a "connection" or "nexus" to current proceedings. Ortega-Rodriguez, 507 U.S. at 249. For example, a lengthy escape "might justify dismissal of a fugitive's action, even after recapture, because the government may be prejudiced in locating witnesses and presenting evidence if a retrial were required, or because it may somehow make meaningful review of the former fugitive's conviction impossible or otherwise disrupt the judicial process." Morrell, 2001 WL 764947, at *6, citing Ortega-Rodriguez, 507 U.S. at 249-50. "Put simply, a former fugitive's action may be dismissed if granting relief is likely to result in an undue burden on the government or if the former fugitive's flight will result in significant interference with the operation of the judicial process." Morrell, 2001 WL 764947, at *6.

In this case, Petitioner absconded following his conviction but prior to his sentencing, and he remained a fugitive for sixteen years until he was arrested in Israel and extradited to Kern County. In the time Petitioner was a fugitive, all of the court reporter's notes of the trial were lawfully destroyed. As a result, a trial transcript does not exist and cannot be created.[3] The absence of a trial transcript caused by Petitioner's flight seriously interferes with this Court's collateral review of his claims over 20 years after his state trial was held. Petitioner cannot point to the trial proceedings to prove prejudice from any trial error, the State cannot fairly dispute any

---

[3]At the motion for new trial, Petitioner's newly appointed defense counsel confirmed that no trial transcripts existed, that all of the court reporter's notes had been destroyed, that former defense counsel Stanley Simrin possessed no notes from the trial, that Mr. Simrin did not have an adequate recollection of the trial proceedings, and that the trial judge had passed away. (CT 313, 320-21.) Therefore, it was virtually impossible to reconstruct a settled statement in lieu of a trial transcript.

1   assertions of prejudice, and the Court cannot properly assess any such claims.  Indeed, the

2   attorney who represented Petitioner at trial whose actions Petitioner now challenges has passed

3   away.  His unavailability to explain his actions and alleged omissions severely prejudices

4   Respondent and makes it impossible to determine whether counsel's actions amounted to

5   incompetence.  Likewise, the judge who presided over Petitioner's trial also passed away while

6   Petitioner remained a fugitive.  Petitioner's flight and sixteen-year fugitivity should disentitle him

7   from litigating any claims of trial error in this Court.  It would be "unconscionable" that

8   Petitioner's "deliberate attempt to evade his day of reckoning, successful for a time, should be

9   allowed to impose additional burdens upon the judiciary to accommodate claims that should be

10  forfeited by flight." United States v. Sudthisa-Ard, 17 F.3d 1205, 1208-09 (9th Cir.1994)

11  (internal quotation marks and citation omitted).

12      2.  Review of Ineffective Assistance of Counsel Claims

13      a.  Failure to Challenge Unbiased Jurors

14      Petitioner first claims his trial counsel failed to protect his right to an impartial jury by

15  allowing two unbiased jurors to remain on the panel. He claims counsel further compounded this

16  error by refusing the trial court's offer for a mistrial after discovering that one of the jurors had a

17  business relationship with one of the victims.

18      This claim should be rejected under the FDD.  As discussed above, there is no transcript

19  available to evaluate Petitioner's claim.  As Respondent correctly states, it is thus impossible to

20  determine whether a juror harbored a hatred for doctors as Petitioner claims, whether the juror

21  who allegedly harbored this hatred actually served on the jury that rendered the verdict, whether

22  the trial court learned one of the jurors had a business relationship with the victims, and whether

23  the trial court did in fact offer a mistrial to Petitioner's counsel but counsel declined the offer.

24  Similarly, Petitioner's claim cannot be properly evaluated because trial counsel has since passed

25  away.  Had Petitioner not absconded and remained a fugitive for sixteen years, his claim would

26  have been heard when counsel was still alive.  Petitioner's fugitivity directly interferes with this

27  Court's review by making it impossible to meaningfully test Petitioner's allegation.  Therefore,

28  under the FDD the claim should be rejected.  Nevertheless, even without application of the FDD,

1    Petitioner's claim still fails.

2        The law governing ineffective assistance of counsel claims is clearly established.  Canales

3    v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging

4    ineffective assistance of counsel, the court must consider two factors.  Harrington v. Richter,

5    supra, 131 S.Ct. at 787; Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21

6    F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was

7    deficient, requiring a showing that counsel made errors so serious that he or she was not

8    functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.

9    The petitioner must show that "counsel's representation fell below an objective standard of

10   reasonableness," and must identify counsel's alleged acts or omissions that were not the result of

11   reasonable professional judgment considering the circumstances. Harrington, 131 S.Ct. at 787,

12   citing, Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th

13   Cir. 1995).  Petitioner must show that counsel's errors were so egregious as to deprive defendant

14   of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  Judicial scrutiny of

15   counsel's performance is highly deferential.  A court indulges a "'strong presumption' that

16   counsel's representation was within the 'wide range' of reasonable professional assistance."

17   Harrington, 131 S.Ct. at 787, quoting, Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d

18   1446, 1456 (9th Cir.1994).

19       Second, the petitioner must demonstrate prejudice, that is, he must show that "there is a

20   reasonable probability that, but for counsel's unprofessional errors, the result ... would have been

21   different," Strickland, 466 U.S. at 694.  "It is not enough 'to show that the errors had some

22   conceivable effect on the outcome of the proceeding.'" Harrington, 131 S.Ct. at 787, quoting,

23   Strickland, 466 U.S. at 693.  "Counsel's errors must be 'so serious as to deprive the defendant of

24   a fair trial, a trial whose result is reliable.'" Harrington, 131 S.Ct. at 787-788, quoting,

25   Strickland, 466 U.S. at 687.  A court need not determine whether counsel's performance was

26   deficient before examining the prejudice suffered by the petitioner as a result of the alleged

27   deficiencies.  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove

28   prejudice, any deficiency that does not result in prejudice must necessarily fail.

1    Establishing that a state court's application of <u>Strickland</u> was unreasonable under 28

2    U.S.C. § 2254(d) is very difficult. <u>Harrington</u>, 131 S.Ct. at 788.  Since the standards created by

3    <u>Strickland</u> and § 2254(d) are both 'highly deferential,' when the two are applied in tandem,

4    review is 'doubly' so. <u>Harrington</u>, 131 S.Ct. at 788, *quoting*, <u>Knowles v. Mirzayance</u>, 556 U.S.

5    111, 123 (2009).

6    Here, without a transcript, it is impossible for Petitioner to demonstrate error on the part

7    of counsel, or that counsel's alleged errors resulted in any prejudice.  He cannot show that a

8    juror harbored hatred for doctors as he claims; he cannot show that the juror who allegedly

9    harbored this prejudice actually served on the jury and rendered the verdict; he cannot

10   demonstrate that the trial court offered a mistrial to Petitioner's counsel; and he cannot show that

11   counsel declined the offer.  In sum, he cannot demonstrate that counsel's decisions were

12   objectively unreasonable, or that, but for counsel's errors the result would have been different.

13   The claim should be rejected.

14   *b. Failure to Retain Toxicology Expert*

15   Petitioner next alleges trial counsel rendered ineffective assistance by failing to retain a

16   toxicology expert to analyze and rebut the prosecution's evidence concerning the presence of

17   Ativan in blood samples.

18   Pursuant to the FDD, this claim should also be dismissed.  As correctly argued by

19   Respondent, without a trial transcript it is impossible to determine whether the jury heard

20   evidence regarding the presence of Ativan in blood samples taken from the victim, what form

21   such evidence took, or how significant this evidence was in light of all other evidence.

22   Moreover, the Court cannot determine whether or not defense counsel did in fact present a

23   toxicology expert.  If he did not, because he is now deceased the Court cannot inquire into his

24   reasons.  These impediments to collateral review were caused by Petitioner absconding prior to

25   sentencing.  He should not now be rewarded for his interference with the orderly administration

26   of justice. <u>Sudthisa-Ard</u>, 17 F.3d at 1208-09.

27   Notwithstanding, the claim fails on the merits because he cannot prove any of the facts to

28   support it.  Moreover, he does not identify any experts who would have testified in his defense,

1   what they would have proffered, and how it would have altered the outcome. United States v.

2   Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what

3   witness would have testified to and how such testimony would have changed the outcome of the

4   trial, there can be no ineffective assistance of counsel); Grisby v. Blodgett, 130 F.3d 365, 373

5   (9th Cir. 1997) (Speculation about what an expert could have said is not enough to establish

6   prejudice). This claim should therefore be denied.

7           c.  Failure to File Notice of Appeal and Order Trial Transcripts

8           Petitioner also claims counsel failed to file a notice of appeal and request that trial

9   transcripts be prepared.  For the same reasons discussed above, this claim should be rejected

10  under the FDD.

11          In addition, the claim is completely without merit.  As noted by Respondent, in California

12  a criminal defendant cannot appeal until his sentence has been pronounced.  In re Gray, 179

13  Cal.App.4th 1189, 1196 (2009); see People v. Valladoli, 13 Cal.4th 590, 597 (1996) (Only after a

14  sentence is imposed following the return of a verdict is there a "final judgment that may be

15  appealed.")  Also, a court reporter's duty to prepare a transcript is not triggered until a defendant

16  is sentenced.  In re Steven B., 25 Cal.3d 1, 11 (1979).  Here, Petitioner absconded before

17  sentencing.  Therefore, Petitioner's counsel could not file an appeal or trigger the court reporter's

18  obligation to prepare transcripts.  Accordingly, Petitioner fails to show that counsel erred.  Also,

19  Petitioner cannot show prejudice because no trial transcripts exist from which to review

20  Petitioner's grounds for appellate relief.  The claim should be denied.

21          d.  Conflict of Interest

22          Petitioner alleges his defense attorney had a conflict of interest because he was paid a

23  large sum of money as a retainer to cover his fees and expenses.  Petitioner contends that his

24  attorney therefore had an interest in spending as little as possible on Petitioner's defense in order

25  to keep the balance for himself.

26          The Supreme Court has held that the Sixth Amendment right to effective assistance of

27  counsel includes the right to counsel free from conflicts of interest.  Mickens v. Taylor, 535 U.S.

28  162, 166 (2002); Wood v. Georgia, 450 U.S. 261, 271 (1981); Cuyler v. Sullivan, 446 U.S. 335,

349-50 (1980).  In order to demonstrate a conflict of interest, a petitioner must show that his

counsel operated under an "actual conflict," which, "for Sixth Amendment purposes, is a conflict

of interest that adversely affects counsel's performance." Mickens, 535 U.S. at 172.

Nevertheless, and fatal to Petitioner's claim here, the Supreme Court has not extended Sixth

Amendment conflict of interest jurisprudence beyond conflicts involving multiple concurrent

representation.  Mickens, 535 U.S. at 162, 174-76.  In fact, the Supreme Court has held that

conflicts other than multiple representation, such as conflicts based on financial issues, are not

constitutionally based.  Id. at 174-75.  Petitioner therefore cannot obtain relief, and the claim

must be rejected.

      *e.  Motion for New Trial*

      In 2007, Petitioner was extradited back to Kern County.  On August 2, 2007, he appeared

in Kern County Superior Court with counsel Stanley Simrin. (CT[4] 305.)  Mr. Simrin moved to be

relieved as attorney of record, and the superior court granted the motion.  (CT 305.)  The public

defender was appointed at that time. (CT 305.)  On August 30, 2007, Deputy Public Defender

Glenn Nelson appeared on behalf of Petitioner. (CT 310.)  Mr. Nelson attempted without success

to locate the trial transcripts in order to prepare for a motion for new trial. (CT 310.)  Court

reporter Kathy Foster stated she had never transcribed her notes but had forwarded them to Kern

County Court Reporter Supervisor Martin Brantley. (CT 322.)  Mr. Brantley stated the notes

were destroyed in 2001 by order of Hon. Richard Oberholzer pursuant to California Government

Code § 69955(e) which authorized destruction of reporter's notes over ten years old. (CT 336.)

      On October 29, 2007, Petitioner filed a supplemental motion for new trial. (CT 312.)  On

December 3, 2007, the motion was denied.  (RT[5] 313-18.)

      Petitioner claims defense counsel Glenn Nelson, his appointed counsel at the hearing on

motion for new trial and at sentencing, was ineffective.  He alleges counsel failed to cross-

examine records supervisor Martin Brantley; he claims counsel failed to investigate certain

---

[4]"CT" refers to the Clerk's Transcript on Appeal.

[5]"RT" refers to the Reporter's Transcript on Appeal.

16

1   alleged inconsistencies in Brantley's declaration; and, he claims counsel failed to investigate

2   whether the destruction of the court reporter's notes had been reported to the California Judicial

3   Council.

4           The Kern County Superior Court rendered the last reasoned decision on this claim.  In

5   rejecting the claim, the superior court noted that Mr. Brantley stated that the notes were destroyed

6   in 2001 pursuant to court order as authorized by statute.  Petitioner provided no evidence to

7   impeach Brantley's declaration.  (See Lodged Doc. No. 11.)  Petitioner's contentions are mere

8   speculation and completely insufficient to demonstrate ineffective assistance of counsel.  See

9   United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did

10  not indicate what witness would have testified to and how such testimony would have changed

11  the outcome of the trial, there can be no ineffective assistance of counsel); Eggleston v. United

12  States, 798 F.2d 374, 376 (9th Cir.1986) (When the defendant fails to establish what additional

13  information would be gained by the discovery she or he now claims was necessary, an ineffective

14  assistance claim fails).  Moreover, even if the notes were destroyed six years after his flight

15  rather than ten years as required by the statute, the outcome would have been the same since

16  Petitioner's flight ultimately caused the unavailability of the transcripts.  As correctly stated by

17  Respondent, in looking to California cases involving destruction of court reporter notes prior to

18  appeal, "courts have only vacated or reversed the judgment where the fault, if any, for

19  defendant's predicament could be ascribed to governmental authorities or employees, *not to*

20  *defendant*." People v. Valdez, 137 Cal.App.3d 21, 25 (1982) (emphasis added).

21          Therefore, the state court rejection of this claim was not contrary to, or an unreasonable

22  application of, clearly established Supreme Court precedent as set forth in Strickland v.

23  Washington, 466 U.S. 668 (1984). See 28 U.S.C. § 2254(d)(1). The claim should be denied.

24          B.  Ineffective Assistance of Appellate Counsel

25          Petitioner next alleges his appellate counsel rendered ineffective assistance by failing to

26  present the claims discussed above.

27          As previously noted, a claim for ineffective assistance of counsel must meet the two-part

28  test advanced in Strickland. 466 U.S. 668.  This standard also applies to appellate counsel.

1    Morrison v. Estelle, 981 F.2d 425, 427 (9th Cir.1992); Miller v. Keeney, 882 F.2d 1428, 1433 (9th

2    Cir.1989).  Thus, Petitioner first must show that counsel "made errors so serious that counsel was

3    not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second,

4    [Petitioner] must show that the deficient performance prejudiced the defense.  Id. at 687.  Since

5    the petitioner must affirmatively prove prejudice, any deficiency that does not result in prejudice

6    must necessarily fail.  Id. at 697.

7        As discussed above, Petitioner's ineffective assistance claims concerning trial counsel are

8    meritless.  Without trial transcripts, it was impossible for appellate counsel to prove ineffective

9    assistance of trial counsel, and counsel is under no duty to raise nonmeritorious arguments.  Boac

10   v. Raines, 769 F.2d 1341, 1344 (9th Cir.1985).  Therefore, Petitioner fails to demonstrate that

11   appellate counsel erred, and he cannot establish that any prejudice resulted from counsel's

12   alleged omissions.

13       Petitioner has not demonstrated that the state court's rejection of the ineffective assistance

14   of counsel claim was contrary to, or an unreasonable application of, the Strickland standard.  The

15   claim should be rejected.

16                              **RECOMMENDATION**

17       Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

18   corpus be DENIED with prejudice.

19       This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill,

20   United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

21   and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District

22   of California.

23       Within thirty (30) days after date of service of this Findings and Recommendation, any

24   party may file written objections with the Court and serve a copy on all parties.  Such a document

25   should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies

26   to the Objections shall be served and filed within fourteen (14) days after date of service of the

27   Objections.  The Finding and Recommendation will then be submitted to the District Court for

28   review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**   **June 13, 2012**                         **/s/ Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE